IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| JOHN MICHAEL CHERRY; aka JOHN M | § | CASE NO: 05-44629 |
| CHERRY; aka MIKE CHERRY | § | |
| Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| STEPHEN E JACKSON, *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3181 |
| | § | |
| JOHN MICHAEL CHERRY, *et al* | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

On September 8, 2006, the Court heard arguments regarding eight separate motions to dismiss.  The Court's findings and conclusions are set forth below.

When considering a pre-emptive motion to dismiss, the Court must accept the Plaintiff's well-pled allegations as true.  *Albright v. Oliver,* 510 U.S. 266, 268 (1994).  Accordingly, the facts set forth in this opinion assume the accuracy of the Plaintiff's pleadings.

This adversary proceeding was initiated on February 10, 2006, with the filing of the Plaintiffs' complaint.  The majority of the claims asserted alleged injury to the "Bristol Parties" which were defined to include Stephen Jackson, Stephen Heyman, Bristol Resources Holdings, Inc., Bristol Production Company, Stephens Investment Company, American Central Gas Technologies, Inc., and Bristol Resources Real Estate Holdings Inc.  The Complaint also incorporated previous claims put forth in the NIPSCO litigation pending in District Court in and for Tulsa County in the State of Oklahoma.  (Case no. CJ-2000-01874).  (Doc. No. 1, Attach. 1, Ex. A).  On March 20, 2006, the Defendants filed a Motion for a More Definite Statement

regarding the complaint.  (Docket no. 7.)  The Defendants claimed the use of "Bristol Parties" was ambiguous and vague.  As such, the Defendants stated they could not tell who had ownership of what claim and who was asserting each particular action.  (Mot. Def. Stmt. ¶ 4.)

Thereafter, on May 8, 2006, Plaintiffs filed a Motion for Leave to Amend Complaint and to File Plaintiffs' First Amended Complaint.  (Docket no. 26).  In conjunction with this motion, Plaintiffs filed their First Amended Complaint (Docket no. 28).  A hearing was held on June 8, 2006, regarding the Defendants' Motion for a More Definite Statement and the filing of the Plaintiffs' First Amended Complaint.  At this hearing, the Defendants requested the Court grant the Plaintiffs' motion for leave to amend.  The Plaintiffs requested the same.  The Court began hearing arguments regarding § 523(a)(2) claims.  However, due to the complexity of the parties involved and the vagueness of the First Amended Complaint, the Court stopped the proceedings, deemed the First Amended Complaint as filed, and ordered the Plaintiffs to replead.  When repleading, the Court required the Plaintiffs to specifically identify each cause of action and what party brought that cause of action.  The Plaintiffs were also instructed to include all relevant facts without simply stating they were incorporating prior petitions.  In compliance with the Court's order, the Plaintiffs filed their Second Amended complaint on July 10, 2006 (Docket no. 54).

## Background

Plaintiffs allege that John Michael Cherry ("Cherry") created various entities and trusts to carry out a fraudulent scheme to misappropriate assets from corporations in which he served as a director and shareholder.  These entities and shareholders of these entities claim they relied on Cherry to act in the best interest of the corporations and to abide by signed participation and operating agreements.  The Defendants include three trusts created by Cherry, six corporations,

Cherry, and several members of Cherry's family who are or were shareholders in the corporations.

**Docket Number 70:**
**Holland Cherry & Estate of Mary L. Cherry's Motions to Dismiss:**

Plaintiffs contend Cherry created Capital Partners, Inc. ("CPI") as part of his alleged fraudulent scheme. Allegations against CPI extend to Holland H. Cherry and the Estate of Mary L. Cherry, Cherry's father and late mother, who are alleged to be the sole shareholders of CPI.

Bristol Resources Corporation ("BRC") was in operation from approximately 1985 to 1999 for the purpose of engaging in the exploration, operation and development of oil and gas properties. BRC was owned in equal one-third shares by Cherry and Plaintiffs Stephen E. Jackson and Stephen J. Heyman. Cherry served as Chief Executive Officer, President and Director of BRC.

As part of its regular business operations, BRC was expected to develop oil and gas wells that would be owned in equal shares by Cherry, Jackson and Heyman. An agreement was created between Cherry, Jackson and Heyman whereby each shareholder would own interests in the wells on a one-third, one-third, one-third basis.

In 1994, Bristol Resources Holding ("BRH") was formed. BRH became the parent company of BRC with Cherry having the same executive positions as in BRC. Cherry, Jackson and Heyman each owned one-third of the outstanding shares of BRH and were to continue to abide by their agreement to share distributions and participations in oil and gas properties on a one-third, one-third, one-third basis.

Plaintiffs allege Cherry convinced BRH, through Jackson and Heyman, that Cherry would forego certain bonuses and distributions if BRH would purchase a residence at 10202 South Braden in Tulsa Oklahoma ("the Braden House"), discussed in detail below at the Court's

ruling on docket numbers 67 and 72.  BRH, therefore, agreed to this purchase.  They allege that shareholder distributions were to be equalized per the one-third, one-third, one-third ownership agreement.  Plaintiffs assert Cherry's representations were fraudulent and induced the Plaintiffs to believe that Cherry would not make distributions in favor of himself to the detriment of BRH and Jackson and Heyman.  Plaintiffs allege Cherry caused BRH to suffer losses by embezzling the products or proceeds of oil and gas interests and by causing BRC to pay personal expenses including influencing BRC to pay for the Braden House.

CPI was formed by Cherry on February 13, 1995.  In 1997, Cherry developed Ni Fuel Company f/k/a NIPSCO Fuel Company, Inc. ("NIPSCO") to develop and operate oil and gas properties.  Cherry represented to BRH that investment of its oil and gas properties in a venture with NIPSCO would be beneficial to BRH.

Later in 1997, Cherry formed Bristol Resources Production Company L.L.C. ("BLLC").  The members of BLLC included NIPSCO Fuel Company, Inc., BRH, BRC, Bristol Production Company ("BPC"), Stephens Investment Company and the Hydrocarbon Analysts, Inc.  Each member contributed properties to form BLLC.  The value of properties contributed to BLLC determined each member's interest.  Cherry, who had developed NIPSCO, grossly overvalued the properties NIPSCO contributed.

BRC was to manage BLLC.  Cherry, as president of BRH, had complete managerial control of BRC and BLLC.  Through a signed Participation Agreement, BLLC was to allow key employees, including Cherry, Jackson and Heyman, to participate in wells BLLC was to develop.  The Agreement imposed timing, notice and payment requirements.  Plaintiffs contend while Cherry was president of BRH, he "surreptitiously obtained" assignments of interests in wells without complying with the Participation Agreement. Cherry allegedly caused these

assignments to be made in the name of CPI and the Resources for Sharing and Caring ("RSC"), other entities allegedly created by Cherry, discussed below.  The assignments were then allegedly transferred to Cherry Oil and Gas.

On September 17, 1999, Cherry resigned his positions as president of BRH, BPC and BRC.  Subsequent to Cherry's resignation, Plaintiffs maintain that Cherry solicited written assignments for his "personal interests" in wells from BRC employees within his "sphere of control."  On or about October 16, 1999, Cherry purportedly sent an email to Anita Phillips at BRC with a list of the well interests he believed he owned, seeking assignments of interests in wells in which he claimed he participated.

In addition, Plaintiffs assert that on or about September 13, 1999, Cherry, without notice to Plaintiffs, caused BRC to execute a deed and transfer title of the Braden House to CPI for no consideration. Cherry also created an allegedly bogus note to create an obligation of $300,000 owed by CPI to BRC.  Based on Cherry's testimony in a previous proceeding, Plaintiffs contend CPI transferred its assets including the Braden House and certain alleged misappropriated interested in oil and gas wells from BLLC into Cherry Oil and Gas ("COG"), an entity created in 2000, in exchange for stock.

Plaintiffs' allegations against Holland H. Cherry and the Estate of Mary L. Cherry stem from their positions as the sole shareholders of CPI. Defendants  assert  Plaintiffs have  not properly pled how Holland and Mary Cherry can be individually liable for fraud while acting in a corporate capacity.  Also, in addition to their Rule 7009 and 7012(b)(6) claims, Defendants assert the Plaintiffs lack standing and are improper parties to bring this claim.  This cause of action, Defendants believe, should be a derivative cause of action with the claim belonging to BLLC.  Before addressing the Defendant's motion to dismiss, the Court will first address

whether Holland Cherry and the Estate of Mary Cherry, individually, are proper defendants and if the Plaintiffs have standing to bring this action.

*1. Individual Liability of Holland H. Cherry and the Estate of Mary L. Cherry*

Oklahoma law allows the court to disregard the corporate shield "when it is essential in the interest of justice to do so, or where the corporate shield is used to defeat an overriding public policy." *King v. Modern Music Co.*, 33 P.3d 947, 952 (citing *Thomas v. Vertigo, Inc.* 900 P.2d 458, 460 (1995)). The corporate veil may be pierced if the corporate form was "used . . . to perpetrate fraud whether actual or implied . . ." *In re Estate of Rahill,* 827 P.2d 896, 897 (Okla. Civ. App. 1991). "Oklahoma has long recognized the doctrine of disregarding the corporate entity in certain circumstances." *Fanning v. Brown*, 85 F.3d 841, 846 (Okla. 2004). "Courts may disregard the corporate entity and hold stockholders personally liable for corporate obligations or corporate conduct under the legal doctrines of fraud, alter ego and when necessary to protect the rights of third persons and accomplish justice." *Id.* (*citing Mid-Continent Life Ins. Co. v. Goforth,* 143 P.2d 154, 156 (Okla. 1943)), *Fanning* 85 P.3d at 846 (*citing Goforth* 143 P.2d at 156) ("courts may disregard the legal fiction that bestows on a corporation an existence separate and distinct from its stockholders when necessary to protect the interests of the public, circumvent fraud and protect the rights of third persons or accomplish justice").

In addition, Oklahoma Courts have held that "an officer of a corporation is personally liable for an act which constitutes a conversion of a third person's property even though the act be done on behalf of the corporation; such liability for conversion does not rest upon knowledge or intent of the defendant." *Preston-Thomas Const., Inc. v. Centr. Leasing Corp*., 518 P.2d 1125 (Okla. Civ. App. 1973). When receipt of funds is involved, Oklahoma courts have held "an officer or director of a corporation is personally liable for the wrongful use of funds entrusted to

it if (1) he receives any of the money; (2) he participates in the wrongful asset distribution; or (3) being ignorant of the wrongdoing, he is negligent in failing to learn of and prevent it." *Id.*

Applying Oklahoma law on director's liability, the corporate veil may be pierced and personal liability may be extended to the stockholders if the corporation was a shield to perpetrate fraud or if the corporation participated in an act constituting conversion.  If CPI were found to have participated in fraudulent transfers, it is possible for the Court to pierce the corporate veil and extend liability to CPI's shareholders.   The Plaintiffs have asserted that Holland and Mary Cherry were the sole shareholders of CPI.   Therefore, under Oklahoma law, Holland and Mary Cherry may be held personally liable for CPI's corporate malfeasance. Accordingly, Holland Cherry and the Estate of Mary L. Cherry are proper Defendants in this action.

The Court does not—and need not for the purposes of this memorandum opinion— determine whether the allegations are sufficient for the Court to exercise its discretion to pierce the veil under Oklahoma law.  For the purposes of determining whether the causes of action should be dismissed without a trial, the Court finds that the allegations are sufficient to allow the plaintiffs to proceed.

*2. Standing*

Defendants assert this is a derivative cause of action and, therefore, BLLC should be the proper entity to pursue this claim against Holland Cherry and the Estate of Mary L. Cherry. However, BLLC's owners entered into a participation agreement that provided that each of the members would be entitled to individually participate on a defined percentage basis in oil and gas wells.  The agreement contained certain timing, notice and payments requirements to be followed by the members of BLLC when obtaining their oil and gas interests.   Plaintiffs'

allegations against Cherry arise from the fact that while he was president of the managing member of BLLC, he failed to provide written notice that he was taking interest in certain properties.  It is further alleged that these "surreptitiously obtained" assignments were made in the name of CPI and RSC.  These allegations arise, not from a breach of duty to BLLC, but rather from Cherry's alleged breach of the participation agreement.   To be sure, the plaintiffs must limit their damages claims to those claims owned by them.  However, such a limitation does not mandate the pre-emptive dismissal of the cause of action.

Oklahoma Courts generally require the following elements for a breach of contract claim: (1) Formation of a contract between Plaintiff and Defendant; (2) Defendant breached the contract; (3) Plaintiff suffered damages as a direct result of the breach. *See* Okla. Uniform Jury Instr.-Civ., O.S. § 23.1.  Oklahoma borrows these elements from cases in other jurisdictions. *Id;*. *See, e.g.*, T*hompson v. Phillips Pipe Line Co*., 200 Kan. 669, 438 P.2d 146, 149 (1968) ("In stating a claim on contract, the pleader should allege the making of the contract, its terms, and the breach thereof, which must not be left to inference."); *Gilomen v. SW. Mo. Truck Ctr*., 737 S.W.2d 499, 500-01 (Mo. Ct. App. 1987) ("To state a cause of action for breach of contract, a plaintiff must allege (a) the making and existence of a valid and enforceable contract between the plaintiff and the defendant, (b) the right of the plaintiff and the obligation of the defendant thereunder, (c) a violation thereof by the defendant, and (d) damages resulting to the plaintiff from the breach.").

The Participation Agreement constituted a contract between Cherry and the other members of BLLC including BRH, BPC and Stephens Investment Company.  The Plaintiffs have alleged that Cherry's transfer of interest in certain oil and gas wells to CPI for little or no consideration constitutes a breach of the Participation Agreement.  This breach allegedly caused

"a diminution of the assets of BLLC and thereby to the members." (Compl. ¶ 69).  The Plaintiffs in this action include BRH, BPC and Stephens Investment Company.  These Plaintiffs were direct beneficiaries of the Participation Agreement and have properly alleged they have suffered damages as a result of Cherry's alleged breach of contract.

This is not a situation where the owners of a company are asserting that the company itself was the victim of a contract breach.  Rather, the individuals assert that they were personally injured.  In determining ownership of claims, the Fifth Circuit instructs this Court to evaluate the nature of the injury suffered.  *See In re Educators Group Health Trust v. Wright,* 25 F.3d 1281 (5th Cir. 1994)*.*  Plaintiffs have standing to bring this claim.

In regards to the transfer of the Braden House, Plaintiffs have alleged the transfer to CPI caused injury to BRH and "violated the agreement that the shareholders receive equal distribution."  (Compl. ¶ 64.)  Additionally, Plaintiffs allege Cherry caused improvements to be made to the Braden House and paid for by BRH to the detriment to BRH, Jackson and Heyman.  BRH, Jackson and Heyman individually have averred injury from Cherry's conduct.  Therefore, Plaintiffs have proper standing to bring this claim.

*3. Rule 7009:*

The particularity requirement of Rule 9 demands the party bringing the claim allege "the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred."  *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994) (*citing In re Kelton Motors Inc,* 121 B.R. 166, 187 (Bankr.D.Vt.1990)).  "The allegations should allege the nature of the fraud, some details, a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants."  *In re Haber Oil Co.,*12 F.3d at 439 (citing *Askanase v. Fatjo,* 148 F.R.D. 570, 574 (S.D.Tex.1993));  *See also, Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 ("the Rule 9(b)

standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent"), *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453 (5th Cir. 2005) ("At a minimum, [Rule 9] requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."). Furthermore, "[b]ankruptcy courts should and do insist that the stringent standard imposed by Bankruptcy Rule 7009 be observed by parties claiming fraud . . . ." *In re Haber Oil Co., Inc.* 12 F.3d at 439 (citing *In re Kelton Motors*, 121 B.R. at 187). The defendant's state of mind, however, may be generally averred. *E.g., Collmer v. U.S. Liquids, Inc.*, 268 F. Supp. 2d 718, 723 (S.D. Tex. 2003).

In their amended complaint, the Plaintiffs have provided thorough facts demonstrating the creation of CPI and how Cherry was able to transfer interest from entities in which he participated through CPI. The Complaint is extremely specific and states what the allegations are, when the alleged fraudulent transfers occurred and who participated in the transfers. Plaintiffs have also specified which well interests they allege Cherry caused to be transferred to himself from BLLC through CPI and RSC and a detailed set of facts in regards to the transfer of the Braden House. Accordingly, the Court finds Plaintiffs have met their burden of pleading fraud with particularity.

*4. Rule 7012(b)(6)*

A motion asserting a 12(b)(6) defense allows for dismissal due to a "failure to state a claim upon which relief can be granted." FED. R. CIV. PRO. 12(b)(6). The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support their claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick,* 15 F.3d

1338, 1341 (5th Cir.1994).  All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true.  *Albright v. Oliver,* 510 U.S. 266, 268 (1994).  In addition, all facts pled must be specific, not merely conclusory.  *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).  When evaluating Rule 12(b)(6) motions, the Court should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

The Plaintiffs' complaint does contain very specific allegations against CPI.  However, whether Holland and Mary Cherry used the corporation as a shield to further the alleged fraudulent scheme of Cherry is not as clearly averred as the activities of CPI.  A Rule 12(b)(6) motion must be granted only when the Court concludes that the Plaintiff could prove no set of facts to support the claim.  Before the Court are the facts that Holland and Mary L. Cherry were the sole shareholders of CPI, they are Cherry's parents and there are allegations CPI participated in fraudulent activities including conversion.  In viewing the complaint as a whole and the specificity of the allegations pled against CPI, the Court finds the Plaintiffs have provided a basis to support a claim under Oklahoma law against Holland Cherry and the Estate of Mary L. Cherry, individually.  Accordingly, the Defendants' motion to dismiss is denied.

### Docket Number 67:
### Debtor's Motion to Dismiss BRREH §§ 523 & 727 Claims as Untimely

Bristol Resources Real Estate Holdings, Inc. ("BRREH") is a wholly owned subsidiary of BRH.  In Cherry's capacity as president of BRH, he controlled BRREH.  Plaintiffs allege on or about May 23, 1996, Cherry caused BRREH to purchase a house in Tulsa, "the Braden House," for $270,000.  BRH paid the consideration for the purchase and had the asset placed on the general ledger of BRREH.  The general warranty deed transferred the Braden House to BRREH.  In 1996 and 1997 without the knowledge of BRH, Cherry allegedly transferred shareholder

distributions of approximated $225,000 and caused BRH to pay $167,246 in improvements to the Braden House.  BRREH believed that the Braden House remained in record title to BRREH until at least April 2000. Cherry allegedly failed to disclose to BRREH that he attempted to transfer the Braden House to CPI Partners in September 1999.  Cherry then allegedly filed a special warranty deed on September 13, 1999, transferring the Braden House from BRC (who was not in the chain of title) to CPI.  Later in March 2000, Cherry, acting on behalf of BRREH as its president, even though he had already resigned, executed a corrected deed purportedly granting, transferring and conveying the Braden House to CPI.  Thus, Plaintiffs allege, Cherry illegally completed the defalcation of the Braden House and caused BRREH to suffer damages in the amount of the loss of the house.

523(a)(4) excepts from discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.  11 U.S.C. § 523(a)(4).  § 523(a)(6) excepts from discharge a debt incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  § 727 excepts from discharge debts when the debtor has transferred, removed or destroyed property from the estate within certain time limits and with the intent to defraud creditors, when the debtor has concealed or destroyed recorded information relating to the debtors financial condition or business practices or if the debtor knowingly made a false oath or account in connection with the case.  *See* 11 U.S.C. § 727(a)(2) - (4).  Plaintiffs allege BRREH is a creditor of Cherry's arising out of the transfer of the Braden House.  Cherry believes BRREH's claims (the second, seventh and eighth causes of action in the second amended complaint) should be dismissed because they were asserted outside of the requisite statute of limitations.

This adversary proceeding was initiated on February 10, 2006, with the filing of the Plaintiffs' original complaint.  In the original complaint Bristol Resources Real Estate Holdings, Inc. ("BRREH") is named as a Plaintiff.  (Docket no. 1).  The original complaint alleges Cherry's debts should not be discharged under § 523(a)(4), § 523(a)(6), § 727(a)(2), § 727(a)(3), and § 727(a)(4).  In asserting their claims, Plaintiffs allege, *inter alia,* Cherry owed the Bristol Parties a fiduciary duty which he breached by embezzling and diverting assets from the Bristol Parties, receiving economic gain for his own personal benefit and by fraudulently transferring real estate from the Bristol Parties.  The Bristol Parties are defined to include BRREH.

In regards to the Braden House, the original complaint states that "Cherry transfer[red] the Braden House to an entity controlled by him (Defendant CPI Capital Partners, Inc). . . . ." to the detriment of BRH.  (Original Compl. ¶ 35.)  Plaintiffs also state "Cherry fraudulently caused $167,247.00 in improvements to be made to the House to the detriment of and in fraud of the Bristol Parties" and that "by transferring the House under false and fraudulent pretenses, Cherry wasted assets of the Bristol Parties and personally enriched himself and/or his family members in violation of his fiduciary duties to the Bristol Parties."  (Original Compl. ¶ 36.)

In addition to the claims recited in the original complaint, the Plaintiffs also incorporate the claims asserted in the NIPSCO litigation.  As part of a previous settlement, the Plaintiffs received an assignment of claims against Cherry and the other Defendants which were involved in the NIPSCO litigation   (Doc. No. 1, Attach. 1, Ex. A.)  The NIPSCO complaint discusses the Braden House.  NIPSCO claimed that "[t]he residence was originally purchased on or about May 24, 1996 in the name of Bristol Resources Real Estate Holdings, Inc. with the commingled funds of Bristol 1994 Limited Partnership." (*Id.* at ¶ 38.)  NIPSCO then states the residence was later conveyed to CPI.  In its complaint, NIPSCO asserted a fraud claim against Cherry and BRREH

claiming the defendants failed to disclose payment of distributions, personal expenses, and other wrongful transactions and activities, including transfers involving the Braden House. (*Id.* at ¶ 78.)

On March 20, 2006, the Defendants filed a Motion for a More Definite Statement in regards to the original complaint. (Docket no. 7.) The Defendants claimed the use of "Bristol Parties" was ambiguous and vague. As such, the Defendants stated they could not tell who had ownership of what claim and who was asserting each particular action. (Mot. Def. Stmt. ¶ 4.)

Thereafter, on May 8, 2006, Plaintiffs filed a Motion for Leave to Amend Complaint and to File Plaintiffs' First Amended Complaint. (Docket no. 26.) This motion did not list BRREH as a plaintiff. In conjunction with this motion, Plaintiffs filed their First Amended Complaint which also failed to include BRREH as a plaintiff. (Docket no. 28). The first amended complaint alleged a claim under § 523 and § 727 and incorporated the NIPSCO litigation. Plaintiffs alleged that Cherry breached his duty to BRH by embezzling property from BRC, diverting property to himself and others, and by diverting assets, including real estate, from BRC and the entities it managed. (Am. Compl. ¶¶ 67 – 70.) As discussed above, BRC managed BRH which wholly owned BRREH.

A hearing was held on June 8, 2006, regarding the Defendants' Motion for a More Definite Statement and the filing of the Plaintiffs' First Amended Complaint. At this hearing, the Defendants requested the Court grant the Plaintiffs' motion for leave to amend. The Plaintiffs requested the same. However, before substantive arguments were heard, Plaintiffs stated

> Your Honor, except there are two things that I would bring to the Court's attention. Number one, there are some corrections that needed to be made to it. I omitted some parties and I want to make that clear to the Court. The heading

> ended up being incorrect with regard to it.  And I just caught that as I was going
> through it, to tell you the truth.

(Doc. No. 101, Attach. 1, 3:21 – 4:2.)  Plaintiffs went on to assert that BRREH had inadvertently

been left out of the heading and the body of the complaint.  The Court stated it would decide

later in the hearing whether the Defendants were on notice as to what BRREH's complaint was

and whether BRREH should be allowed to replead or be dismissed.  (Doc. No. 101, Attach. 1,

14:5-9.)

      The Court began hearing arguments regarding § 523(a)(2) claims.  However, as stated

above, due to the complexity of the parties involved and the vagueness of the First Amended

Complaint, the Court stopped the proceedings, deemed the First Amended Complaint as filed,

and ordered the Plaintiffs to replead.  In compliance with the Court's order, the Plaintiffs filed

their Second Amended complaint on July 10, 2006 (Docket no. 54).  The Second Amended

Complaint included BRREH in both the heading and specifically listed certain claims belonging

to BRREH.  These claims included objections to dischargeability under §§ 523(a)(4), 523(a)(6),

727(a)(2), 727(a)(3) and 727(a)(4).

      On August 8, 2006, Cherry moved to dismiss BRREH's claims as untimely.  Cherry

believes the claims set forth in the Second Amended Complaint cannot relate back to the

Original Complaint because BRREH had been omitted from the First Amended Complaint.

(Docket no. 67.)  The Plaintiffs filed a response on September 5, 2006, arguing that under Rule

15(c), they should be allowed to amend their pleading and have the amended pleading relate

back to the original pleading.  The original pleading fell within the statute of limitations of § 523

and § 727.  The second amended pleading does not.  Even though BRREH was left out of the

first amended complaint, Plaintiffs state it was an inadvertent mistake and that claims were

properly alleged by BRREH in the original complaint.  Plaintiffs assert the following: (1)

BRREH was defined as a Bristol Party in the original complaint; (2) the original complaint maintains that Cherry's debt to the Bristol Parties should not be discharged; (3) facts are alleged in the original complaint relating to the Braden House; (4) the Complaint asserts Cherry owed the Bristol Parties certain duties; (5) the Complaint references misappropriation of real estate from the Bristol parties and; (5) the Plaintiffs incorporated the NIPSCO litigation into the complaint which included claims against Cherry related to the Braden House.  In addition, Plaintiffs argue that at the June 8, 2006 hearing, they allowed the first amended complaint to be deemed filed only because they were granted leave to amend to replead and specify claims against Cherry.

A hearing was held on September 8, 2006, on the Defendants' outstanding motions to dismiss.  At this hearing, the Court requested the parties to brief the issue of the vitality of the claims in the amended complaint in light of the missing party.  The parties submitted briefs on September 29, 2006 and October 3, 2006 (Docket nos. 100 & 101).

In evaluating the parties' arguments, the Court examines four concepts: (1) the limitations period for filing an objection to discharge or to determine the dischargeability of debt under bankruptcy rules 4004(a) and 4007(c); (2) Rule 15(c) (amendments to a complaint) and the relation back theory; (3) amending a complaint to add new causes of action under § 523(a) and; (4) amending a complaint to add new plaintiffs.

*a. Rules 4004(a) and 4007(c)*

Bankruptcy Rule 4004(a) provides that the time for filing a complaint objecting to the debtor's discharge under § 727(a) must be filed not later than 60 days after the first day set for the meeting of creditors under § 341(a).  Rule 4007(c) provides that in a chapter 7, a complaint to determine the dischargeability of a debt under § 523(c) must be filed not later than 60 days

following first date set for the meeting of creditors under § 341(a).  The Supreme Court states these time limits serve three purposes: "First, they inform the pleader, *i.e.,* the objecting creditor, of the time he has to file a complaint. Second, they instruct the court on the limits of its discretion to grant motions for complaint-filing-time enlargements. Third, they afford the debtor an affirmative defense to a complaint filed outside the Rules 4004(a) and (b) limits."  *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004).

The time limits set under Rules 4004 and 4007 are inflexible.  *See Id.* Generally, creditors objecting to discharge must rigorously adhere to these deadlines.  *See In re Ichinose*, 946 F.2d 1169, 1172-73 (5th Cir. 1991) ("any exceptions to discharge must be filed within a strictly enforced time limit.");  *Neeley v. Marchison*, 815 F.2d 345, 346 (5th Cir. 1987) (enforcing Rule 4007(c) even when the creditor had no notice of the deadline, stating Rule 4007(c) "evince[s] a string intent that the participants in bankruptcy proceedings be assured that, within the set period of 60 days, they can know which debts are subject to an exception to discharge.").  While the Fifth Circuit has held these limitations' periods are to be strictly followed, the Plaintiffs argue adding a new plaintiff should be allowed because, in this instance, the amendment falls under Rule 15(c).

*b. Rule 15: Amending a complaint:  the relation back theory.*

Rule 15 of the Federal Rules of Procedure (incorporated by Bankruptcy Rule 7015) instructs that leave to amend a complaint "shall be freely given." FED. R. BANKR.P. 7015(a).  The Fifth Circuit liberally allows plaintiffs an opportunity to amend. *Lyn-Lea Travel Corp. v. Am. Airlines,* 283 F.3d 282, 286 (5th Cir.2002) (*quoting Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.,* 690 F.2d 1157, 1162 (5th Cir.1982)) (the language of Rule 15 "evinces a bias in favor of granting leave to amend.");  *Id.* (*quoting Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th

Cir.1985)). ("A district court must possess a "substantial reason" to deny a request for leave to amend.").[1]   At the June 8, 2006 hearing, this Court recognized the broad latitude given to plaintiffs to allow amendments and instructed the Plaintiffs to amend their first amended complaint.  The Plaintiffs did so and submitted their second amended complaint.  The issue presently before the Court is whether the second amended complaint properly "relates back," as expressed under Rule 15(c), to allow BRREH to present a claim in the second amended complaint.

Under Rule 15(c), an amendment to a complaint may relate back to the date of filing the original complaint.  FED. R. BANKR.P. 7015(c).  An amendment will relate back if the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." FED. R. BANKR.P. 7015(c)(3);   *In re Coastal Plains, Inc.*, 179 F.3d 197, 216 (5th Cir. 1999) (*citing F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994)).  Allowing amendments to "relate back" furthers the goal having a statute of limitations.

> The theory that animates this rule is that once litigation involving particular conduct or given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction or occurrence as set forth in the original pleading.   Permitting such an augmentation or rectification of claims that have been asserted before the limitations period has run does not offend the purpose of a statute of limitations, which is simply to prevent the assertion of stale claims

*F.D.I.C.*, 20 F.3d at 1385.  Accordingly, if an original claim was asserted within the applicable limitations period, and a newly asserted claim arises from the same facts advanced in the original

---

[1] In determining whether a party shall be granted leave to amend, the Fifth Circuit examines five considerations: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2001) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir.2003)). "Absent any of these factors, the leave sought should be "freely given."' *Id.* (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  This Court instructed the Plaintiffs to amend; therefore these considerations are irrelevant to the issue presently before the Court.

complaint, the related amended claim will also be considered as falling within that original statute of limitations.  *Id.*

*c. Relation back regarding § 523(a) claims*

　　As stated above, Courts generally adhere to the strict guidelines of requiring complaints objecting to or determining the discharge of debt to be asserted within 60 days after the date set for the first meeting of creditors under § 341.  However, some courts, including courts in the Fifth Circuit, have allowed a party to amend his complaint from one charge under § 523(a) to another under § 523(a) when the actions involved in both arise out of the same events.  When allowed, the new § 523(a) claim relates back to the date of the original § 523(a) claim.  *See In re Fondren*, 119 B.R. 101, 104 (Bankr. S.D. Miss. 1990) ("Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the original complaint which alleged a violation under section 523(a)(2).  Therefore, under Rule 15(c). . . the requested amendment here is allowable and will relate back to the date of the original complaint.");  *In re Heath*, 114 B.R. 310, 312 (Bankr. N.D. Ga. 1990) (a claim under § 523(a)(6) may relate back to an earlier complaint asserting a claim under § 523(a)(4) if it arises out of the same transaction or occurrence.);  *In re Oxburn*, 203 B.R. 811, 813 (Bankr. S.D. Ga. 1996) (because the movant's § 523(a)(15) claim "arises out of the same transactions and set of facts giving rise to the timely filed § 523(a)(5) complaint, the amendment relates back to the date of original filing and is timely under Rule 4007(c).").

　　The Fifth Circuit allows amendments of § 523(a) claims.  *Bercier v. Bank of La.*, 934 F.2d 689, 693 n.7 (5th Cir. 1991).  In *Bercier*, the court barred the plaintiff from asserting a particular amended claim under § 523(a).  *Bercier,* 934 at 693.  However, in barring the claim, the court stated, "[w]e do not suggest that an amended complaint adding a ground of challenge to

the dischargeability of a particular debt would not relate back, for purposes of Bankruptcy Rule 4007(c), to the time of filing of the same creditor's original complaint challenging the dischargeability of the identical debt."  *Id.* at 693, n.7.  *Bercier* involved the *same* creditor changing his claim under § 523(a)(6) to § 523(a)(2).  The Court did not address a *different* creditor asserting a new § 523(a) claim.

*d. Amending a complaint to add new plaintiffs*

Rule 7015 allows an amendment to add new claims or defenses and the change "the party or the naming of the party against whom a claim is asserted."  FED. R. BANKR.P. 7015(c)(3).  On its face, Rule 15(c)(3) applies to defendants and changing a party name.  Courts, however, have looked to the Advisory Committee Notes of Rule 7015 in holding the relation back provision also applies to amendments changing plaintiffs.

> The relation back of amendments to changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier.  Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

FED. R. CIV. P. 15(c) 1966 Amendment, Advisory Committee Note;  *SMS Fin. Ltd Liab. Co. v. ABCO Homes, Inc.*, 167 F.3d 235, 234 (5th Cir. 1999);  *Tessier v. Moffatt*, 93 F. Supp.2d 729, 736 (E.D. La. 1998).  An amendment adding a plaintiff is considered to relate back to the original complaint "if the plaintiff is a real party in interest."  *Tessier*, 93 F. Supp. 2d at 736 (*citing* 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2ND § 1501 (2006)).  The existing plaintiffs in *Tessier*, a partnership's limited partners, sought to add the limited partnership as a plaintiff.  *Tessier*, 93 F. Supp. 2d at 736.  In evaluating the amendment, the Court found the partnership's claims were based on the same transactions as the claim complained of originally and the defendants were informed the

partnership had an interest in the outcome of the litigation.  *Id.* Accordingly, the defendants were on notice of the claims and the amendment would not cause them any prejudice.  *Id.*

Courts in other circuits have allowed amended complaints adding new plaintiffs to relate back to the original complaint when the new plaintiffs and the original plaintiffs are closely related in their business enterprise.  *See Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382 (9th Cir. 1982) (allowing amendment substituting a plaintiff partnership for the original corporate plaintiff when the major partners were the same in both); *Hernandez Jimenez v. Calero Toledo*, 604 F.2d 99, 103 (1st Cir. 1979) (allowing an amendment when the original plaintiff and added plaintiff were a parent corporation and wholly owned subsidiary); *Staren v. Am. Nat'l Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir. 1976) (allowing substitution of a corporation in lieu of the president of the corporation and his business associate).  Recently, the First Circuit, quoting *Hernandez Jimenez,* stated new and original plaintiffs have a sufficient identity in interest to allow an amendment to relate back to the original when they are "related corporations whose officers, directors, or shareholders are substantially identical and . . . have similar names or share office space, [or are] past and present forms of the same enterprise." *Young v. Lepone*, 305 F.3d 1, 15 (1st Cir. 2002) (*quoting Hernandez Jimenez*, 604 F.2d at 103).  In defining "identity in interest" *Young* stated an "identity of interest typically means that parties are 'so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" *Id.*  (*quoting Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 197 (3d Cir.2001) (*citing* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1499 (2nd ed.1990)).

While new and original plaintiffs must share and identity in interest, this is not the only requirement for Rule 15(c).  Whether a petition adding a plaintiff will relate back to a previous

petition depends on notice provided to the defendants.  *Chesson v. TJR P'ship*, No. C.A. H-01-315, 2006 WL 903711, at *8 – 9 (S.D. Tex. Apr. 6, 2006) (*quoting Williams v. United States*, 405 F.2d 234, 237 (5th Cir. 1968) ("notice is the critical element involved in Rule 15(c) decisions. . ."); *Id. (quoting Young*, 305 F.3d at 16-17) ("Notice is the 'linchpin' of the analysis.").  Sufficient notice is determined by evaluating the amount of unfair prejudice the amendment would cause the non-moving party.  *Id.* (citing *Young*, 305 F.3d at 17) ("lack of notice and unfair prejudice go hand in hand.").  Accordingly, in determining whether BRREH was properly added as a plaintiff in the second amended complaint, the Court must first examine the notice to the Debtor.

*Analysis*

Defendants argue when the Plaintiffs amended their complaint the first time, the first amended complaint became the "live pleading."  Defendants believe for a complaint to survive a statute of limitations argument, it must relate back to a live pleading.  Because BRREH was left out of the first amended complaint, Defendants contend BRREH had no live pleading.  Therefore, Defendants assert, the second amended complaint including BRREH cannot now relate back to the first amended complaint because there is "no live pleading filed by [BRREH]" for which BRREH may "relate to."  (Docket no. 100 ¶ 21).

The Court finds this argument unpersuasive.  As discussed above, in certain circumstances courts allow plaintiffs to amend complaints to add or substitute new plaintiffs.  The Advisory Committee notes to Rule 15(c) support the same by specifically referring to "changing plaintiffs."  When plaintiffs are added or changed, these new plaintiffs will never have a former live pleading for which they can relate back.  Therefore, the Defendants' argument that BRREH cannot now be added because there is no live pleading, fails.  In this instance, whether

the plaintiffs were involved in a prior complaint or are entirely new to the proceeding is irrelevant.

Cherry was president of BRREH and BRH.  BRH was also the parent company of BRREH.  A new plaintiff may be added to a proceeding and their claim may relate back to the original filing if the new plaintiff is a real party in interest.  Parties in interest between plaintiffs have included wholly owned subsidiaries and the parent corporation, corporations who share major stockholders, substitution of a corporation for corporate officers, and corporations which share officers, directors or office spaces.  *Tessier*, 93 F. Supp. 2d at 736; *Raynor Bros*, 695 F.2d at 384; -85; *Hernandez Jimenez*, 604 F.2d at 103; *Young*  305 F.3d at 15.  The Court finds because BRREH was a subsidiary of BRH and shared the same president, BRREH is a party in interest in this litigation.  However, whether or not BRREH should now be allowed to interject itself into the current pleading depends on whether the claims BRREH advances arise out of transactions and occurrences previously asserted in the first amended complaint.  If so, Cherry should have had notice sufficient to overcome possible prejudice from now adding BRREH.

The original complaint specifically refers to the transfer of the Braden House and that this transfer was detrimental to the "Bristol Entities" (which included BRREH). (Docket. no. 1 ¶¶ 35-39.)  The first amended complaint refers to Cherry diverting assets from BRC and the entities it managed and Cherry's activities in "fraudulently transferring and misappropriating real estate from BRC and the entities it managed." (Docket no. 28 ¶ 70.)  Both complaints incorporate the NIPSCO litigation which alleged that the Braden House was purchased in the name of BRREH with "commingled funds." (Doc. No. 1, Attach. 1, Ex. A. ¶ 38.)  Based on the allegations contained in the original and first amended complaint, the Court finds Cherry was on notice that the debt created by the alleged fraudulent activities surrounding the Braden House was being

challenged as non-dischargeable.  While BRREH was not specifically mentioned in the first amended complaint, its claims arise out of the same transactions and occurrences as stated therein.  An amendment to add BRREH does not result in any prejudice to the defendants' interest.  Accordingly, the Court finds the second amended complaint relates back to the first amended complaint which related back to the original complaint. The Plaintiffs' claims have been properly asserting during the applicable limitations period.  The Debtors motion to dismiss is therefore denied.

**Docket Number 68:**
**Mary Margaret Cherry's, Individually and as Trustee of the Mary Margaret Cherry**
**Living Trust, Motion to Dismiss pursuant to BR 7009 and 7012(b)(6)**

Mary Margaret Cherry is Trustee of the Mary Margaret Cherry Living Trust and currently the sole member of Resources for Sharing and Caring ("RSC").  RSC was allegedly formed on or about November 17, 1997, with $500 in capital.  Cherry, as trustee for the John M. Cherry Living Trust and Mary Margaret Cherry, as trustee for the Mary Margaret Cherry Living Trust were designated the members of RSC.  Mary Margaret Cherry is also alleged to have been the President of Cherry Oil and Gas ("COG") of which RSC owns 70%.

Plaintiffs allege Cherry began his relationship with Mary Margaret Cherry prior to the formation of BRH.  When Cherry formed BRH, Plaintiffs allege Cherry was already in violation of the one-third, one-third, one-third agreement, discussed above, because he had already begun transferring property interest to Mary Margaret Cherry. These alleged transfers caused a diminution in the interest of Plaintiffs Jackson and Heyman.

Plaintiffs allege this scheme began on or about June 6, 1993, when Cherry sent a letter to Mary Margaret Cherry describing the fraudulent scheme and providing assignments of oil and

gas interest which were to remain unfilled.  The letter directs Mary Margaret Cherry to set up a bank account to receive fraudulently transferred wells. (Compl. Ex. D.)

Plaintiffs have implicated RSC, of which Mary Margaret Cherry is believed to be the sole member, in Cherry's alleged fraudulent scheme by stating Cherry, while president of BRH, "surreptitiously obtained" assignments of interests in wells made in the name of CPI and RSC without complying with the Participation Agreement.   The assignments were then allegedly transferred to COG after CPI and RSC were named as defendants in previous litigation involving NIPSCO.

 In September 1999, just prior to Cherry's resignation from his offices in Plaintiff entities, Plaintiffs believe Cherry executed "an Assignment of Membership Interest . . . assigning and transferring Cherry's membership interest in RSC to Mary Margaret Cherry, as Trustee of the Mary Margaret Cherry Living Trust" for no consideration. (Compl. ¶ 256)  Cherry then allegedly executed a Special Warranty Deed, as recorded in the Real Property Records of Delaware County, Oklahoma, on September 14, 1999, transferring his one-half interest in property in Tulsa, Oklahoma (the "Grove House") to Mary Margaret Cherry, Trustee of the Mary Margaret Cherry Living Trust.

Plaintiffs also allege on or about February 2000, Cherry further diluted the value of BRH's investments by fraudulently transferring interests out of BRH through assignments denoting CPI and RSC as interest owners.  It is also alleged Cherry had, by this time, transferred his interest in BRH to RSC.  RSC is then alleged to have transferred their assets to COG in exchange for stock.  Plaintiffs claim Cherry has previously testified that COG then sold most, if not all of the oil and gas property interest, repatriating the monies to COG for his and Defendant Mary Margaret Cherry's benefit.

In evincing the overall fraudulent plans of Cherry, Plaintiffs assert Cherry caused the Braden House, as discussed above, and the Grove Property, title to which had already been allegedly one-half transferred from Cherry into the Mary Margaret Cherry Living Trust, to be sold.  The sales from these non-exempt properties were then partially transferred into RSC, whose sole member was then Mary Margaret Cherry.  The purpose of these transfers, Plaintiffs believe, was so Cherry could convert non-exempt property "which he had obtained through fraud for no consideration into trust and sham entities and back to themselves as exempt property." (Compl. ¶ 70.)

Mary Margaret Cherry is also implicated in working with Cherry to misappropriate assets through Plaintiff entities into CPI, as discussed above, and in her position as manager of COG.  Along with their Rule 7009 and 7012(b)(6) claims, the Defendants assert this cause of action belongs to BLLC, therefore Plaintiffs lack standing to bring this claim.  The Court will first address standing issues.

*1. Standing*

Defendants argue the Plaintiffs lack standing to assert transfers were fraudulent which allegedly began before the date of creation of BRH.  The transfers, however, are alleged to have continued throughout the late 1990's and early 2000's.  Pursuant to the one-third, one-third, one-third agreement instituted at the creation of BRH, Cherry and Plaintiffs Jackson and Heyman were to have equal ownership; therefore, any diversion from this interest would be to the detriment of the other two members.  Accordingly, any party to the agreement has the ability to bring a claim based on an act in contravention of that agreement.  The Plaintiffs, therefore, have standing.

*2. Rule 7009 Fraud: The Ninth and Tenth[2] Causes of Action.*

As discussed above, fraud must be pled with particularity.  The Plaintiffs have implicated Mary Margaret Cherry as being involved in working with Cherry to transfer monies into CPI and as a participant in the companies RSC and COG and as Trustee of the Mary Margaret Cherry Living Trust.  The Plaintiffs have properly pled her ownership stake and managerial capacities in these entities.  The Plaintiffs have identified specific dates the alleged transactions occurred, specific well assignments which were transferred and the path the alleged fraudulent transactions took in landing in entities allegedly controlled by Mary Margaret Cherry.  The Court, therefore, finds Plaintiffs have met their burden of pleading alleged fraud with particularity.  The Defendant's Motion to Dismiss under Rule 7009 is denied.

*3. Rule 7012(b)(6):  Ninth and Tenth Causes of Action.*

For purposes of determining if the Plaintiffs' complaint states a claim to survive a motion to dismiss under 12(b)(6), the Court must assume the allegations in the Plaintiffs complaint are true and must determine if it is possible for the plaintiff to prove any set of facts entitling them to relief.  *Albright* 510 U.S. at 268.  As discussed regarding the Defendants 7009 pleading fraud with particularity, the facts alleging the fraud have been meticulously pled.

Although its authenticity is hotly disputed, the Court must accept as true that the letter which allegedly began Mary Margaret Cherry's involvement in the fraud was found on Cherry's computer and was sent to Mary Margaret Cherry.  When taking all the facts pled by the Plaintiffs into consideration, the Court finds the Plaintiffs have provided a basis to find Mary Margaret Cherry did participate with Cherry in fraudulent activities.  Accordingly, Defendants 12(b)(6) motion to dismiss is denied.

---

[2] The Plaintiffs have incorrectly denominated two causes of action as their "tenth" cause of action.  Except as otherwise set forth in this opinion, all references to the "tenth" cause of action refer to the cause of action first listed as the tenth cause of action.

**Docket Number 65:**
**Cherry Oil and Gas Company, LLC's Motion to Dismiss**

As discussed above, Cherry was a controlling member of several of the Plaintiff and Defendant corporations involved in this suit.  He resigned his positions as an officer and director of these corporations on September 17, 1999.  Subsequent to his resignations, on or about December 16, 1999, Plaintiffs allege Cherry Oil and Gas Co, L.L.C. ("COG") was formed.  The sole shareholders of COG were CPI and RSC.  As discussed above, Plaintiffs allege CPI and RSC were formed by Cherry for the purpose of receiving assets fraudulently transferred from or through the Plaintiff entities to the detriment of Plaintiff entities and their shareholders.  These assets were then allegedly contributed to form COG.  Plaintiffs claim that Cherry has testified in previous suits that "COG sold most if not all of the oil and gas property interests, repatriating the monies to COG for his and Defendant Mary Margaret Cherry's benefit." (Compl. ¶ 36.)

COG now moves to dismiss Plaintiff's claims pursuant to Rules 7009 and 7012(b)(6) for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted.

*1. Rule 7009 Fraud: The Ninth and Tenth Causes of Action.*

As discussed above, Rule 9 requires a Plaintiff who alleges fraud to plead the allegations with particularity.  FED. R. CIV. P. 9(b).  "The Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent" *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

In supporting their claim against COG, Plaintiffs have been able to point to the specifics involved in the alleged transfers. Plaintiffs have reported COG was created by contributions of capital from two companies, RSC and CPI.  RSC contributed $424,600 in cash and property to

have a 70% ownership stake and CPI contributed $182,000 in cash and property to have a 30%

ownership stake.  The contributed properties, Plaintiffs allege, consisted of oil and gas properties

Cherry had caused to be transferred to RSC and CPI without consideration and to the detriment

of the Plaintiffs.  As discussed above in the Court's ruling on docket number 70, Plaintiffs have

clearly outlined the creation of CPI and the alleged fraudulent transfers.  Accordingly, the Court

finds Plaintiffs have met their burden under Rule 9 to plead these causes of action with

particularity.  The Court, therefore, denies Cherry Oil and Gas's Motion to Dismiss for failure to

plead fraud with particularity.

*2. Rule 12(b)(6): The Ninth and Tenth Causes of Action.*

Fraud has been broadly defined under Oklahoma law.  It can include "any act designed to

gain an unfair advantage over another." *See Ragland v. Shattuck Nat'l Bank*, 36 F.3d 983, 990

(10th Cir. 1994). Fraud may consist of silence, concealment, or non-disclosure of a material fact.

*See Hammond v. Remora 82 Co,.* 69 F.3d 547 (10th Cir)  Oklahoma also recognizes fraud can

be actual or constructive.  Constructive fraud does not require intent to deceive. *Ragland,* 36

F.3d at 990 (citing *Faulkenberry v. Kansas City S. Ry. Co*, 602 P.2d 203, 206 fn 6 (Okla. 1979).

Constructive fraud can be any breach of a duty which, regardless of the actor's intent, gains an

advantage for the actor by misleading another to his prejudice and has the very same legal

consequence as actual fraud based on a misrepresentation of material fact. *Patel v. OMH Med.*

*Ctr, Inc.,* 987 P2d, 1185, 1199 (Okla. 1999).

As discussed above, a motion asserting a 12(b)(6) defense allows for dismissal due to a

"failure to state a claim upon which relief can be granted."  FED. R. CIV. PRO. 12(b)(6).

Defendants contend that since COG was set up after Cherry resigned from his executive position

at the Plaintiff entities, COG could not have participated in any schemes or conspiracy to

29

defraud.  Also, Defendants point to the fact that several of the alleged fraudulent transfers were signed by managing directors of some of the entities now alleging fraud.  While these facts may both be true, in ruling on a 12(b)(6) motion, the Court has to accept the Plaintiffs allegations and determine if the Plaintiffs have stated any valid claim for relief.  Oklahoma's broad definition of fraud allows for liability to be found based on "any act designed to gain an unfair advantage over another." *See Ragland,* 36 F.3d at 990. As discussed above in regards to the Rule 9(b) motion, the Plaintiffs have provided a roadmap of how alleged misappropriated assets have ended up with COG.  These actions, as alleged by Plaintiff, show COG participated with other Defendants to defraud the Plaintiffs.

The Court is cognizant of the fact that Cherry's defenses appear to be compelling.  He had left the corporation, he was no longer a corporate officer, and other corporate agents executed the assignments.  However, for the Court to dismiss this cause of action based on those allegations would be to reach a determination on the inferences from the facts before the Court has considered the evidence in the case.

The mere facts that Cherry had left the corporation and that corporate agents executed documents in Cherry's favor does not mean that Cherry did NOT defraud[3].  The issue is whether the well-pled facts in the Plaintiff's petition—without more—suffice.  Accordingly, the Court will disregard the alleged defenses and deny Cherry Oil and Gas's Motion to dismiss for failure to state a claim under Rule 7012(b)(6).

---

[3] The Court previously denied the Plaintiffs an opportunity to conduct discovery.  The Court ruled that discovery could not commence until a pleading was filed that satisfied Rule 9's specificity requirement.  The Defendants had filed summary judgment motions along with their motions to dismiss.  When the Court announced that it would allow discovery on the summary judgment issues, the summary judgment motions were withdrawn.  Defendants requested a ruling on the motions to dismiss before discovery commenced.  The Defendants were procedurally correct and the Court did not allow discovery.  However, it would be unfair to now rule in favor of the Defendants on a matter pled by the Defendants before the Plaintiffs have had an opportunity to conduct discovery.

*3. Eleventh Cause of Action: Defendants have a unified existence*

In the eleventh cause of action Plaintiffs allege all Defendants have a "unified existence" and there is no real distinction between corporate Defendants.  Further, Plaintiffs allege "[i]t is unfair to treat the Debtor and non-Debtor Defendants as separate entities since they are conduits for one another and have shared business purposes."  (Compl. ¶ 320.) Therefore, Plaintiffs allege that Defendants, Debtor and others have been engaged in a single business enterprise.

Oklahoma law allows the court to disregard the corporate shield "when it is essential in the interest of justice to do so, or where the corporate shield is used to defeat an overriding public policy."  *King v. Modern Music Co.*, 33 P.3d 947, 952 (Okla. Civ. App. 2001) (*citing Thomas v. Vertigo, Inc.* 900 P.2d 458, 460 (Okla. Civ. App. 1995)).  The corporate veil may be pierced if the corporate form was "used (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime."  *In re Estate of Rahill,* 827 P.2d 896, 897 (Okla. Civ. App. 1991).  Further, Oklahoma courts have held to disregard the corporate entity when more than one corporation is involved, the movant must show either of the following:

> (1) that the separate corporate existence is a design or scheme to perpetuate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is merely a dummy or sham.  In such cases, the distinct corporate entity will be disregarded and the two corporations will be treated as one

*King,* 33 P.3d at 853 (citing *In re Estate of Rahill*, 827 P.2d at 897).

Plaintiffs have alleged that the Debtor operated through "a myriad of business entities which [were] designed to perpetuate fraud."  (Compl. ¶ 319.)  When evaluating Rule 12(b)(6) motions, the Court should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v.*

*Gibson,* 355 U.S. 41, 45-46 (1957).  The Plaintiffs have alleged an intricate web of entities created by Cherry to channel assets obtained through alleged fraudulent means and at the expense of Plaintiffs.  COG has been alleged to have both received and further transferred misappropriated funds in furtherance of Cherry's purported scheme.  Accordingly, the Court finds sufficient factual allegations exist for the Plaintiff to have stated a claim on which relief may be granted.  The Defendant's motion to dismiss is denied.

### Docket Number 66:
### CEC Energy Motion to Dismiss under BR 7009 & 7012

CEC Energy Partners, LLC and CEC Energy Consultants, LLC (collectively "CEC) move to dismiss Plaintiffs' claims pursuant to Rules 7009 and 7012(b)(6).  These include the same causes of action nine, ten, and eleven as discussed above. Plaintiffs have alleged Cherry created CEC Energy Consultants, L.L.C. and CEC Energy Partners, L.L.C.   (Collectively "CEC") in 2004 for the purpose of receiving "revenues derived from the sale of the oil and gas properties by Defendant COG for the purpose of investment of those monies in yet other oil and gas properties and drilling programs."  (Compl. ¶ 301.)  Plaintiffs allege Cherry exercised control over CEC through COG.  In addition, Plaintiffs claim CEC engaged in fraud by assisting Cherry by receiving and holding "ill-gotten gains" of his fraudulent activities. (Compl. ¶  295.)

*1. Rule 7009 Fraud: The Ninth and Tenth Causes of Action.*

As stated above, the Rule 9 particularity requirement demands the party bringing the claim allege "the existence of facts and circumstances sufficient to warrant the pleaded conclusion that fraud ha[s] occurred."  *In re Haber Oil Co.*, 12 F.3d 426, 439 (5th Cir. 1994).  "The speaker must state the when and why the statements were made, and an explanation why they are fraudulent."  *U.S. ex rel. Williams v. Bell Helicopter Textron Inc.,* 417 F.3d 450, 453 (5th Cir. 2005).

In supporting their claims for fraud, Plaintiffs argue that under Oklahoma law "[o]ne who participates with, or who has knowledge of, with the opportunity to speak, but fails to do so is guilty of fraud. . . ."  (Compl. ¶ 295.)  Also, "[o]ne who participates knowingly, or with reckless disregard of the falsity of the conduct of one who commits fraud is also guilty of fraud under Oklahoma law."  (Compl. ¶ 297.)  While Oklahoma law may define activities such as those generally alleged by the Plaintiffs as fraudulent, Plaintiffs have stated only broad facts supporting the claim that CEC assisted Cherry in fraudulent activities.  Plaintiffs have claimed CEC participated in a "continuing concealment scheme and/or continued expanding of fraudulent transfers."  (Compl. ¶ 277.)  In the hearing on this matter, Plaintiffs stated they knew oil and gas proceeds from sales were fraudulently transferred, but remained unable to point to a specific showing of the facts in the complaint supporting their claim that CEC is liable for fraud.

The "particularity" requirement under Rule 9 is a necessary safeguard to prevent "potential defendants from lightly made claims charging … acts involving some degree of moral turpitude," suits "advance[d] only for their nuisance or settlement value," and, also, to "deter the filing of suits solely for discovery purposes."  5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1296 (3d ed. 2006).  Because Plaintiffs have been unable to articulate with specificity the who, what, when, where, and how of the alleged fraud, CEC's 7012(b)(6) motion is granted in regards to the ninth and tenth causes of action.

*2. Eleventh Cause of Action: Defendants have a unified existence*

In the eleventh cause of action Plaintiffs assert that Cherry utilized trusts and corporate sham entities in his fraudulent scheme.  Plaintiffs allege all Defendants have a "unified existence" and there is no real distinction between the Defendants.  (Compl. ¶ 319.)  Further, Plaintiffs allege "[i]t is unfair to treat the Debtor and non-Debtor Defendants as separate entities

since they are conduits for one another and have shared business purposes."  (Compl. ¶ 320.)
Therefore, Plaintiff alleges Defendants, Debtor and others have been engaged in a single
business enterprise.

As discussed above, the corporate veil may be pierced if the corporate form was "used
(1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or
implied, or (4) to defend crime."  *In re Estate of Rahill,* 827 P.2d at 897.  Plaintiffs allege the
Debtor operated through "a myriad of business entities" designed to perpetrate fraud.  (Compl. ¶
319.)  Therefore, because CEC was part of the Debtor's alleged ongoing fraudulent scheme,
Plaintiffs believe cause exists to pierce the corporate veil.   This allegation should be
distinguished from a direct charge of fraud.  As explained above, any direct charge of fraud must
meet the requirements of Rule 9.  However, an allegation to pierce the corporate veil, even if it is
related to a claim of fraud, does not have to meet the Rule 9 requirements.  Such an allegation
only has to survive a challenge under Rule 12(b)(6).

While Plaintiffs' complaint does not contain specific allegations against CEC sufficient
to continue with a claim of fraud, the complaint does raise questions as to whether the formation
of CEC was part of Cherry's overall scheme.  As set forth in detail above, veil piercing under
Oklahoma law may be appropriate without a full showing of fraud.  *Fanning v. Brown*, 85 P.3d
841, 846 (Okla. 2004) (citing *Goforth* 143 P.2d at 156) ("courts may disregard the legal fiction
that bestows on a corporation an existence separate and distinct from its stockholders when
necessary to protect the interests of the public, circumvent fraud and protect the rights of third
persons or accomplish justice").  In addition to the allegations stated above, Plaintiffs allege the
"Defendants share offices, employees, accounting departments and other assets and resources.
Further, services [were] rendered by the employees of one company for the other. There is no

real distinction between the companies." (Compl. ¶ 319.)  If the Court accepts the Plaintiffs' claims as true, the above facts may warrant piercing the corporate veil under Oklahoma's standards[4].  Therefore, the Plaintiffs should have the opportunity to present evidence in support of their claim.  Accordingly, this Court denies Defendants' motion to dismiss regarding count eleven.

### Docket Number 71:
### Cherry Dynasty Trust's Motion to Dismiss

The Cherry Dynasty Trust has moved to dismiss Plaintiffs' claims against it under Rule 7009 and Rule 7012(b)(6).  As discussed above, when averring fraud, Rule 7009 mandates that the Plaintiff plead facts with particularity specifying "the 'who, what, when, where, and how' of the alleged fraud."  FED. R. BANKR. P. 7009; *U.S. ex rel. Williams*, 417 F.3d at 453.  Plaintiffs have alleged, *inter alia,* that Cherry transferred assets into entities such as the Cherry Dynasty Trust for no consideration.  These transfers are alleged to have occurred for the purpose of concealing assets from creditors.  Cherry supposedly concealed "bogus transfers" out of BLLC and participated in unorthodox well accounting, kickbacks and the misappropriation of oil and gas interests and the proceeds thereof.  The alleged bogus transfers resulting from Cherry's concealment scheme are believed to have included transfers to the Cherry Dynasty Trust.  Further, Plaintiffs allege the Defendants Cherry and Mary Margaret Cherry utilized and conspired with the trusts, including the Cherry Dynasty Trust to perpetuate the conspiracy.

When queried by the Court about what specifically went into the Dynasty Trust, Plaintiffs' responded, "all I can tell you is that there is property that was transferred into the trust.

---

[4]  Oklahoma does not appear to require that actual fraud be shown to pierce a corporate veil.  The Court is familiar with cases from other jurisdictions to the contrary.  However, the veil piercing claim must be determined in accordance with governing state law. *See Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 646 (5th Cir 2002).  Accordingly, since Oklahoma requires a showing that is short of demonstrable fraud, the Court does not dismiss the veil piercing claim.

We do not know the extent of the property or do we know the source of that." (Sept. 8, 2006, Hr'g Tr. 50:7-10.)  For the Cherry Dynasty Trust to remain as a Defendant, Rule 9 requires, at a minimum, some specificity of what went into the Trust or of some specific act executed by the Trust that would make it culpable for fraud.  The Plaintiffs have made only general allegations and conclusory statements.   Facts alleging fraud have not been pled with particularity. Accordingly, the Cherry Dynasty Trust's Motion to dismiss is granted.

### Docket Number 72:
### John Michael Cherry's Motion to Dismiss

*1. First Cause of Action: Cherry debts to BRH are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4)*

In the first cause of action, Plaintiffs allege Cherry breached his duties to the Plaintiffs by (1) entering into undisclosed business relationships for personal gain; (2) causing BRC and the entities it managed to enter into unfavorable/fraudulent unauthorized third-party agreements; (3) causing BRH's wholly owned company to pay for Cherry's personal legal expenses; (4) causing charges and expenses relating to Cherry's personally owned oil and gas interests to be passed on to BRH's wholly owned entities; and (5) subverting the BLLC Participation Agreement to his own benefit.  Plaintiffs further allege Cherry breached his duties to Jackson and Heyman in their capacities as shareholders of BRH by (1) taking money and property from BRC to which he was not legally entitled; (2) diverting money and property to himself and his family, cohorts and entities under his control to which he was not legally entitled; (3) embezzling property from BRC, BLLC and BREEH; (4) willfully neglecting the duties imposed as an officer and director; and (5) usurping corporate opportunities of BRH and the Plaintiff members of BLLC, including BRH.

523(a)(4) excepts from discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. 11 U.S.C. § 524(a)(4). Before discussing whether fraud has been properly averred, the Court must consider the Defendant's argument that BRH does not have standing to bring this claim.

*a. Standing of BRH*

Defendants argue because many of the claims against Cherry are allegations involving assets misappropriated from entities other than BRH, BRH lacks standing to bring some of these claims. BRH was governed by Cherry, Jackson and Heyman by the one-third, one-third, one-third agreement as discussed above. BRH is the parent company of BRC and BRREH. BRH was also a member in BLLC which was managed by BRC, a subsidiary of BRH, and governed by the Participation Agreement as discussed above. Cherry was a director in all four entities.

Because Cherry served as a director of both the subsidiary and the parent, he had a duty to the parent to properly manage the subsidiaries. *See e.g., In re Westec Corp.*, 434 F.2d 195, 202 (5th Cir. 1970) (finding fiduciary obligations of a manger of a wholly owned subsidiary should be viewed as running toward shareholders of a parent corporation); *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1175 (Del. 1988) (in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated to manage to affairs of the subsidiary in the best interest of the parent and its shareholders). Therefore, when Cherry allegedly diverted funds from the subsidiaries, he would have been breaching his duty as a director to both the parent and the subsidiaries. Accordingly, the parent corporation has standing to bring this claim.

*b. Fraud while in a fiduciary capacity as to BRH.*

In supporting their claim for fraud, Plaintiffs state Cherry (1) embezzled funds and properties from BRC and the entities BRC managed, (2) manipulated the procedure for election of participation in a proposed wells (3) received kickbacks for his own personal benefit; (4) fraudulently transferred and misappropriated real estate from BRC and the entities BRC managed, and (5) committed acts of self-dealing and waste by causing BRC to pay for his personal legal expenses. Further, Plaintiffs allege (6) Cherry caused oil and gas interest to be transferred to employees he designated as bribes for their cooperation and silence; and (7) Cherry fraudulently induced BRH along with Jackson and Heyman to join BLLC as a member by promising to adhere to the Participation Agreement and act as a fiduciary in the best interest of BRH. Plaintiffs also charge that Cherry further induced BRH, Jackson and Heyman to join BLLC by claiming that the percentage ownership in BLLC was fair and reasonable in light of the value of NIPSCO's contributed properties. Plaintiffs have alleged the amount of properties contributed by NIPSCO was grossly overvalued at $24,000,000.

The Court finds in respect to issues involving embezzlement, the Plaintiffs have not alleged enough facts with specificity to allow this to be pursued as an individual claim. However, as far as embezzlement may reflect a breach of fiduciary duty to BRH damages may be awarded.

In respect to the accounting manipulation for the procedure for election in certain wells, allegations of kickbacks, and acts of self-dealing by causing BRC to pay for Cherry's legal expenses, the Court finds these allegations do not meet the sufficiency for pleading under Rule 9. These claims cannot survive by themselves as claims for fraud and therefore cannot be considered as an independent basis for damages. However, these facts may be alleged in support of the underlying fraudulent scheme.

Plaintiffs have alleged that Cherry's discharge should be denied because he engaged in bribery. With one exception, the allegations regarding bribery are not sufficient to meet the requirements of either Rule 7008 or Rule 7009. However, the allegations contained in paragraph 107 of the Second Amended Complaint are sufficient. Accordingly, all allegations concerning bribery are dismissed, with the exception of the allegations contained in paragraph 107.

In respect to the fraudulent inducement allegations, the Court finds that sufficient facts have been pled to meet the burden of particularity as required under Rule 9. Plaintiffs have alleged that Cherry represented to Heyman and Jackson he would adhere to the Participation Agreement and that joining with NIPSCO to form BLLC was in the best interest of Plaintiffs. Cherry also represented that the value of the oil and gas properties NIPSCO was contributing to BLLC was $24,000,000. Plaintiffs believe Cherry knew or should have known that such valuation was erroneous. Plaintiffs have a sufficient claim to survive motion to dismiss under Rule 12(b)(6). The elements of common-law fraud in Oklahoma "are: 1) a false material misrepresentation; 2) made as a positive assertion which is either known to be false, or made recklessly without knowledge of the truth; 3) with the intention that it be acted upon; and 4) which is relied upon by a party to one's detriment," *Gay v. Akin*, 766 F.2d 985, 989 (Okla. 1988) (*citing Tice v. Tice*, 672 P.2d 1168, 1171 (Okla. 1983)). Based on the arguments presented by the Plaintiffs, when these are taken as true, they have laid out a pattern of exaggerated statements and misrepresentations that could rise to fraudulent inducement.

*c. Defalcation while acting in a fiduciary capacity.*

A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement. *In re Moreno*, 892 F.2d 417, 421 (5th Cir.) (*citing* L. KING, 3 COLLIERS ON BANKRUPTCY ¶ 523.14, at 523-93 to 523-95 (15th ed. 1988)). A defalcation determination

generally turns on the issue of if the defendant's breach was willful. *See In re Felt*, 255 F. 3d 220, 226 (5th Cir. 2001). "Willful neglect" of fiduciary duty has been described as "essentially a recklessness standard." *In re Moreno*, 892 F.2d at 421 (citing *Schwager v. Fallas,* 121 F.3d 177, 184, 185 (5th Cir.1997)). Therefore, "willfulness is measured objectively by reference to what a reasonable person in the debtor's position knew or reasonably should have known." *In re Moreno*, 892 F.2d at 421. (citing *Roy v. Gravel,* 143 B.R. 825, 828 (W.D.La.1992)).   The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive. *Id.*

Defalcation has a lower culpability standard than fraud.   Accordingly, because the Plaintiffs have properly alleged enough facts for the Court to proceed with a claim of fraud, the Plaintiffs have also met their standard for a defalcation claim.

*2. Partial Second Cause of Action: Cherry debts to BRREH are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4)*

523(a)(4) excepts from discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.   11 U.S.C. § 524(a)(4). As stated above in the Court's discussion of docket number 67, Plaintiffs allege BRREH is a creditor of Cherry arising out of the transfer of the Braden House.

Plaintiffs have alleged Cherry was president of BRREH and BRH and in that capacity Cherry owed BRREH a duty of loyalty and good faith, duty of candor, duty to refrain from self-dealing, duty to act with integrity, duty of fair and honest dealing and a duty of full disclosure. Cherry had a fiduciary duty to BRREH arising out of his role as its President and as President of BRH.  *See e.g., Air Line Pilots Ass'n Intern v. O'Neill*, 499 U.S. 65, 74 (1991) (citing *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 274 (2nd Cir. 1986) (directors owe a duty of care as well loyalty)).

40

A defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement. *In re Moreno*, 892 F.2d at 421 (citing L. KING, 3 COLLIER ON BANKRUPTCY ¶ 523.14, at 523-93 to 523-95 (15th ed. 1988)). The Plaintiffs have identified specific facts where if taken as true illustrate, at the very least, a defalcation of the Braden House to the detriment of BRREH.  Accordingly, the Defendant's motion to dismiss in regards to this matter is denied.

*3. Partial Second through Sixth Causes of Action: Cherry debts to Plaintiffs  are non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).*

In the Second, Third, Fourth, Fifth and Sixth Causes of Action, Plaintiffs contend Cherry's debts to BRREH, BRH, Bristol Production Company, Stephens Investment Company and Jackson and Heyman are nondischargeable pursuant to § 523(a)(6).  § 523(a)(6) disallows a debt from discharge if the debt is due to "willful and malicious injury by the debtor to another entity or to the property of another." 11 U.S.C. § 523(a)(6).

*a. Standing*

Cherry's possible liability to BRREH, BRH and to Jackson and Heyman is discussed above.   Cherry's liability to BPC and Stephens Investment Company arises from their involvement in BLLC.  BPC and Stephens Investment Company were members in BLLC along with NIPSCO and BRH.  These Plaintiffs were parties to the signed Participation Agreement discussed above and allegedly participated in BLLC based on the representations made by Cherry.  Accordingly, these parties have standing to bring this claim.

*b. § 523(a)(6) willful and malicious*

For a Plaintiff to succeed on a § 523(a)(6) claim, the Plaintiff has the burden of proof in showing that the Defendant acted willfully and maliciously.  In demonstrating willfulness, the Plaintiffs must show that Cherry performed an intentional act, and that act was meant to cause a deliberate injury.  *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (finding willful in the context of

§ 523(a)(6) as causing an intentional injury, not merely a deliberate or intentional act leading to an injury).  The Fifth Circuit has interpreted "malicious" to mean "without just cause or excuse." *Seven Elves, Inc. v. Eskenazi,* 704 F.2d 241, 245 (5th Cir. 1983).  In determining if a debtor acted without just cause or excuse, the court must apply an objective standard  *In re Grier,* 124 B.R. 229, 232 (Bankr.W.D.Tex.1991). "The burden of proving the elements of willfulness or malice lies with the creditor, who must establish they exist by a preponderance of the evidence." *Grogan v. Garner,* 498 U.S. 279, 287 (1991).

Plaintiffs believe Cherry is liable for unjust enrichment and for breach of fiduciary duty to the Plaintiff entities.  The Plaintiffs allege Cherry, through misappropriating assets, among other allegations, breached his fiduciary duties directly to BRH and BPC.   Additionally, Stephens Investment Company, Jackson and Heyman were allegedly injured as shareholders in the Plaintiff corporations and as members of the BLLC Participation Agreement.  The Court finds the pleadings sufficiently set forth a basis that if Cherry breached his fiduciary duty by misappropriating assets, manipulating well accounting, receiving kickbacks, embezzling, and participating in other allegations pled, he was doing so for his personal gain in a manner that was meant to enrich himself at the expense of the Plaintiffs.  In accordance with Rule 12(b)(6), the Court must take the Plaintiffs' allegations as true in ruling on an opposing party's motion to dismiss.  Accordingly, when Plaintiffs' allegations are taken as true, the Court finds the Plaintiffs have stated a claim that Cherry possibly behaved in a willful and malicious manner.  Cherry's Motion to Dismiss as it relates to causes of action two through six is therefore denied.

*3. Seventh Cause of Action.  Cherry should be denied discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(3).*

Under 727(a)(2), a debtor may be denied discharge if he, with intent to hinder, delay or defraud a creditor transferred, removed or concealed property within one year before filing the

bankruptcy petition or after the date of filing transferred, removed or concealed property of the estate. 11 U.S.C. § 727(a)(2). While the Bankruptcy Code imposes a one-year look back period, under the theory of continuing concealment, when an asset is concealed by a debtor by an act such as a nominal transfer before the one-year period, and the debtor retains an interest in the asset, § 727 may still apply. *In re Pratt*, 411 F.3d 561, 567 (5th Cir. 2005) (citing *In re Oliver*, 819 F.2d 550, 554-55 (5th Cir. 1987)).

Under 727(a)(3), the debtor may be denied discharge if he concealed, destroyed or failed to keep or preserve any recorded information from which the debtor's financial condition might be ascertained. 11 U.S.C. § 727(a)(3).

The majority of the Plaintiffs' § 727 claims are based on the theory of continuing concealment. Plaintiffs assert Cherry, through his activities as discussed above, has engaged in a continuing concealment scheme by fraudulently transferring assets to various entities. Plaintiffs believe Cherry still maintains an interest in many of these assets and the transfers were made to defraud creditors. Plaintiffs also allege Cherry has failed to fully comply with production of documents regarding his financial affairs and that many of the records Cherry has produced have been "sanitized." (Compl. ¶ 284.)

At the September 8, 2006 hearing, the Court questioned the Plaintiffs if, aside from one particular transfer of property, there were any other allegation in their complaint which would show continuing concealment within one year. The Plaintiffs replied "[p]ending to the one-year preview, the one year, Your Honor, because we don't know that all the oil and gas interests have been disposed of, that there would be proceeds either from sale of those that could have – that still existed to the one year or that the oil and gas interests are still being produced. So that would be within the one year. And we don't have the records, although a lot of them are

requested."  (Sept. 8, 2006, Hr'g 4:19:34 p.m.)  While the Court finds the allegations relevant to this cause of action to be somewhat thin, the Court must accept the complaint as true and must view the facts in a light most favorable to the plaintiff in ruling on the defendant's 12(b)(6) motion.  The Court recognizes that frequently, weak allegations on concealment, such as the ones currently before the court, are all that are available at this stage of the litigation.  As such, the Court finds the Plaintiffs have stated a claim upon which relief can be granted and the Plaintiffs should be allowed to present evidence relevant to this matter.  Cherry's Motion to Dismiss is denied in regards to the seventh cause of action is denied.

*4. Eighth Cause of Action: discharge should be denied pursuant to § 727(a)(4) due to misrepresentations on bankruptcy schedules.*

Under § 727(a)(4)(A), a debtor may be denied discharge if he "knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C. § 727(a)(4)(A).  False representations in the debtor's schedules can give rise to a claim that the debtor made a false oath or account.  *See In re Sholdra*, 249 F. 3d 380, 382 (5th Cir. 2001).

Plaintiffs allege Cherry made false statements on his Statement of Financial Affairs regarding 401k proceeds and exempt annuities.  Plaintiffs also believe Cherry has interests in offshore bank accounts which were not disclosed on his schedules and that the alleged fraudulent transfers constitute a concealment of assets which should have been disclosed on Cherry's schedules.

The Court finds the allegations contained in Plaintiffs' complaint regarding the eighth cause of action relate to Cherry's state of mind.  Without proper evidence the Court is unable to determine whether Cherry made good-faith statements which were later found to be false or if Cherry made statements based on unreasonably held beliefs.  The Plaintiffs, however, have

raised enough facts to support a claim.   Accordingly, the Court denies Cherry's motion to dismiss in regards to the eighth cause of action.

*5. The Second Tenth Cause of Action: Cherry's debts to Bristol constitute avoidable fraudulent transfers under § 548(e)(1)*

The Court finds the Plaintiffs lack standing to bring claims under § 548(e)(1).   These claims belong to the Trustee.  *E.g., In re Thomas*, No. 06-3355, 2006 WL 2620487, at *2 (Bankr. S.D. Tex. 2006) (citing *In re Bacher*, 47 B.R. 825, 829 (Bankr. E.D. Pa. 1985)) ("only the trustee has standing to utilize § 548, not creditor.").   Accordingly the defendants' motion to dismiss regarding the second tenth cause of action is dismissed without prejudice.

**Docket Number. 69:**
**The Non-Debtor Defendants Motion to Dismiss pursuant to 7009 and 7012(b)(6)**

Mary Margaret Cherry, individually and as trustee of the Mary Margaret Cherry Living Trust, CEC Energy Consultants, L.L.C., CEC Energy Partners, L.L.C., Hydrocarbon Analysts, Inc., Resources for Sharing and Caring, L.L.C., Cherry Oil and Gas, L.L.C., CPI Capital Partners, Inc., Holland H. Cherry, and the Estate of Mary L. Cherry (the "Non-Debtor Defendants") filed a collective motion to  dismiss for failure to state a claim under Rule 7012(b)(6), failure to plead fraud with particularity, for lack of Plaintiffs' standing and alternatively for a more definite statement.   There are four claims that exist against the non-debtor defendants: (1) Defendants engaged in civil conspiracy to commit fraud (the Ninth Cause of Action); (2) Defendants committed fraud (the Tenth Cause of Action); (3) § 548(e)(1) claim regarding an alleged fraudulent transfer (the Second Tenth Cause of Action); and (4) the Defendants engaged in a single business enterprise (the Eleventh Cause of Action).

*a. The Ninth and Tenth Causes of Action*

In regards to Mary Margaret Cherry, individually and as trustee of the Mary Margaret Cherry Living trust, CEC, COG, and Holland H. Cherry and the Estate of Mary L. Cherry, the Court incorporates its ruling on docket numbers 65, 66, 68 and 70.

With respect to RSC, the Court references its ruling on docket number 68 in regards to Mary Margaret Cherry, individually, as the sole shareholder of RSC.  RSC is also believed to have owned 70% of Cherry Oil and Gas.  Accordingly, the Court also incorporates its ruling on docket number 65 regarding Cherry Oil and Gas.  The Court finds Plaintiffs have stated facts which warrant the presentation of evidence as it relates to RSC's possible involvement in fraudulent transactions.  The Non-Debtor Defendants motion to dismiss regarding the ninth and tenth causes of action with respect to RSC is denied.

With respect to CPI, the Court incorporates its findings on docket number 70 regarding Holland H. Cherry and the Estate of Mary L. Cherry who were the alleged sole shareholders of CPI.  The Court finds the Plaintiffs have pled fraud with sufficient particularity.  Therefore, the Non-Debtor Defendants motion to dismiss the ninth and tenth causes of action in respect to CPI is denied.

The Hydrocarbon Analysts owned a .44% interest in BLLC.  Plaintiffs allege it is a company wholly owned and controlled by Cherry and that it participated with the other defendants in violating the operating and participation agreement, discussed above, by knowing that certain transfers were fraudulent.  Plaintiffs also allege that "[o]n or about June 29, 1998 Cherry transferred his shares in Hydrocarbon Analysts, Inc… to the John Michael Cherry Living Trust." (Compl. ¶ 252.).  As stated above, fraud charges must be pled with particularity.  *See* FED. R. CIV. P. 9(b).  The Court finds these facts insufficient to support a claim against

Hydrocarbon Analysts.   Accordingly, the Defendants motion to dismiss as it relates to Hydrocarbon Analysts is granted in its entirety.

*b. The § 548(e)(1) claim*

As stated above, in regards to the § 548(e)(1) claim, the Court finds the Plaintiffs lack standing to bring claims under § 548(e)(1).   These claims belong to the Trustee*.   E.g., In re Thomas*, No. 06-3355, 2006 WL 2620487, at *2 (Bankr. S.D. Tex. 2006) (citing *In re Bacher*, 47 B.R. 825, 829 (Bankr. E.D. Pa. 1985)) ("only the trustee has standing to utilize § 548, not creditor."). Accordingly the defendants' motion to dismiss regarding the second tenth cause of action is dismissed without prejudice.

*c. The Eleventh Cause of Action*

In regards to CEC and COG the Court incorporates its ruling on docket numbers 65 and 66.  The Court also finds based on its rulings on 68 and 70, the motion is denied as to RSC and CPI.   The Defendants claim the single business enterprise cannot relate individually to Mary Margaret Cherry, Holland H. Cherry and the Estate of Mary L. Cherry.   No single business enterprise claim is asserted against the individuals.  This issue is moot.

### Motions for More Definite Statement

In multiple motions, various defendants have sought alternative relief in the form of motions for more definite statements.  The Court has carefully evaluated each cause of action.  If a cause of action was not properly stated, the cause of action has been dismissed.  In other instances, the Court has found that the plaintiffs have complied with their pleading obligations. Accordingly, the motions for more definite statement are denied.

Signed at Houston, Texas, on October 25, 2006.

MARVIN ISGUR
United States Bankruptcy Judge